OPINION
{¶ 1} Defendant-appellant, Randy Brooks, appeals a decision of the Warren County Court of Common Pleas denying his motion to suppress evidence. We affirm.
 {¶ 2} On November 5, 2002, appellant was indicted by a Warren County Grand Jury and charged with possession of cocaine and possession of drug paraphernalia. On December 5, 2002, appellant moved to suppress evidence found during a pat-down search of his person. A hearing on appellant's motion to suppress was held on December 30, 2002.
 {¶ 3} At the suppression hearing, the state presented the testimony of Deputy Sheriff Chris Miller. Miller testified that on September 30, 2002, near the end of his 4:00 p.m. to 12:00 a.m. shift, he received a dispatch of a suspicious person at the intersection of Socialville-Foster and Snider Roads. He related that he received a subsequent dispatch describing the individual as a black male in his mid-thirties, staggering down the roadway.
 {¶ 4} Miller testified that he drove to the intersection and did not see anyone, so he drove up to the next intersection of Snider Road and Irwin-Simpson Road where he saw appellant standing on the grass. Miller observed appellant swaying.
 {¶ 5} Miller related that he parked and exited his patrol car and asked appellant for identification. Appellant had no identification, but he gave Miller his name, birth date and what he said was his social security number ("SSN"). Miller testified that at this time he noticed bulges "all over" appellant's clothing. Miller then stated that he investigated the SSN and discovered that it did not belong to appellant.
 {¶ 6} Miller testified that because the SSN "did not come back to" appellant he "thought that showed a sign of deception that he was either trying to hide something from [Miller] or something else was going to take place." Therefore, Miller stated that he felt it was necessary for his safety to pat down appellant for a weapons search.
 {¶ 7} During the pat-down search, Miller stated that he found a door chime, a box of Nicorette gum and faucet inserts. He also found a crack pipe in appellant's front shirt pocket. He removed the crack pipe because he could not determine what the object was without looking at it and thought "[i]t could have been a knife." After retrieving the crack pipe, Miller arrested appellant.
 {¶ 8} Based upon the evidence presented at the suppression hearing, the trial court found that the pat-down search of appellant was proper. Accordingly, the trial court denied appellant's motion to suppress. After a jury trial, appellant was found guilty of possession of cocaine and possession of drug paraphernalia. Appellant appeals the trial court's decision denying his motion to suppress.
 {¶ 9} Assignment of Error:
 {¶ 10} "The Trial Court Erred In Overruling Appellant's Motion To Suppress Physical Evidence."
 {¶ 11} When reviewing a trial court's decision on a motion to suppress, we must accept the trial court's factual findings if they are supported by competent, credible evidence. State v. Isbele (2001),114 Ohio App.3d 780, 784. However, we independently determine, without deference to the trial court, whether the court applied the appropriate legal standard to the facts. Id.
 {¶ 12} Under the Fourth Amendment to the United States Constitution, a police officer may conduct a brief investigatory stop of an individual only if the officer has reasonable suspicion that the individual is involved in criminal activity. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868. Once an officer has made a reasonable investigative stop and has a reasonable suspicion that an individual may be armed, "the officer may initiate a protective search for the safety of himself and others." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph two of the syllabus, certiorari denied (1988), 488 U.S. 910,109 S.Ct. 264.
 {¶ 13} "The purpose of the limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams (1972), 407 U.S. 143, 146,92 S.Ct. 1921, 1923. The propriety of both the investigatory stop and a protective search must be viewed in light of the totality of the circumstances. Bobo, 37 Ohio St.3d at paragraph one of the syllabus.
 {¶ 14} We find that under the totality of the circumstances presented here, the trial court reasonably determined that Miller was justified in initially stopping appellant and then conducting a pat-down search of his person for weapons. Miller thought appellant matched the description given to him by dispatch. Appellant provided Miller with a false social security number. Appellant had many bulges on his person. After learning that appellant provided false identification, it was reasonable under the totality of the circumstances for Miller to be wary of appellant and therefore conduct a protective pat-down search of appellant's person.
 {¶ 15} Appellant argues that Miller should have ended his pat-down search after identifying the large bulges observed on appellant's person. However, Miller was conducting a pat-down search in order to protect his safety by ascertaining whether appellant had any weapons upon his person which might be used to assault him. See Sibron v. State of NewYork (1968), 392 U.S. 40, 67, 88 S.Ct. 1889, 1905. Therefore, it was not error for Miller to continue with his pat-down search of appellant after identifying the contents of the large bulges he initially saw on appellant.
 {¶ 16} During his pat-down search of appellant, Miller noticed a bulge in appellant's shirt pocket that he could not recognize, but had concern that it could be a knife. Upon retrieving it, he learned that it was a crack pipe. As such, the trial court did not err in allowing the crack pipe to be entered into evidence as it was found pursuant to a valid Terry search. Accordingly, appellant's assignment of error is overruled.
 {¶ 17} Judgment affirmed.
WALSH and BROGAN, JJ., concur.